IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| WILLIAM A. BRANHAM, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. |
| : | 7:08-CV-123(HL) |
| MICHAEL J. ASTRUE, : | |
| Commissioner, Social Security : | |
| Agency, : | |
| : | |
| Defendant. : | |
| _____: | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 24). Plaintiff filed a response titled "Joint Motion to Dismiss" (Doc. 26). For the following reasons, Defendant's Motion is granted.

## I.   PROCEDURAL AND FACTUAL BACKGROUND[1]

On January 3, 2005, Plaintiff, a male veteran, applied for a claims representative position with the Social Security Administration ("SSA"). (Def. Ex. 3).[2]

---

[1] The Court views the facts in the light most favorable to Plaintiff, the nonmoving party.

[2] Many of Defendant's exhibits, including Exhibits 2, 3, 4, 11, 12, 13, and 14 have not been properly made a part of a deposition or affidavit. They have not been authenticated and there is no way of knowing that they are what they purport to be. Thus, they are inadmissible material on summary judgment. The Court nevertheless considers them because Plaintiff has not objected to their admission. See Davis v. Howard, 561 F.2d 565, 569-570 (5th Cir. 1977) (explaining that where material is inadmissible and yet unchallenged, the court can consider the material on summary judgment).

The opening was for a position in the SSA's Valdosta, Georgia office. (Def. Ex. 2). Plaintiff submitted his application after viewing an advertisement for the position on the website www.usajobs.com. (Def. Ex. 6).

The advertisement stated that the position was available for veterans and all Interagency Career Transition Assistance Plan ("ICTAP") eligibles located in the commuting area. (Def. Ex. 2). The ICTAP plan provides displaced federal employees priority selection for available federal jobs during periods of federal downsizing. (Ex. 4). Under the plan, veterans do not have priority selection, but if no ICTAP eligible applies for a position, then the plan allows a government agency to fill a position by normal hiring procedures. (Def. Ex. 4). Plaintiff was never a federal employee or a displaced employee, but he was a veteran with a ten-point preference. (Ex. 3).

The advertisement on www.usajobs.com said that applicants were to send the required application materials to the SSA's Center for Human Resources ("CHR") located in Atlanta, Georgia. (Def. Ex. 2). Plaintiff, however, submitted his application by hand-delivering it to the receptionist at the SSA's Valdosta office. (Def. Ex. 6). His application did not indicate his race or that he had a disability. (Def. Ex. 3).

Linda Rineer ("Rineer"), branch manager at the SSA's Valdosta office, was responsible for filling the claims representative position. (Rineer Supp. Aff. ¶ 1). She stated that she considers applicants from multiple sources when making hiring

decisions. She receives applications through the Federal Career Intern Program, Outstanding Scholar Program, Direct Hire Authority, and www.usajobs.com. (Def. Ex. 6).

Rineer did not know Plaintiff had submitted an application for the claims representative position until after she had hired someone else for the position. (Def. Ex. 6). Moreover, she was unaware that the claims representative position was posted on www.usajobs.com. (Rineer Supp. Aff. ¶ 10). On January 25, 2005, she hired Carlos Coleman, a black, 28 year-old male with bachelor's and master's degrees. (Rineer Supp. Aff. ¶ 6; Def. Ex. 11). She became aware of Plaintiff's application on February 16, 2005, after someone from the SSA's CHR, wrote her asking whether the Valdosta office had his application. (Rineer Supp. Aff.¶ 4). She found Plaintiff's application in a file in her office. (Rineer Supp. Aff. ¶ 4).

Even though she filled the claims representative position on January 25, 2005, CHR sent Rineer the names of the total applicants eligible for the position on March 7, 2005. (Rineer Supp. Aff. ¶ 5). No ICTAP eligible workers appeared on the list. Plaintiff's name was the only name that appeared. (Rineer Supp. Aff. ¶ 5). She reviewed and considered Plaintiff's application at that time, but she had no vacancies to fill. (Def. Ex. 6).

On April 4, 2005, Jan Foushee, Director of the SSA's CHR, wrote Plaintiff informing him that he had not been hired even though he qualified for the claims representative position. (Def. Ex. 12). In a letter dated January 3, 2005, before he

3

had been told that he had not been hired for the position, Plaintiff wrote Mark Anderson, Associate Commissioner of the Office of Civil Rights and Equal Opportunity. (Def. Ex. 13). Plaintiff stated that he had been denied the claims representative position, even though he was a veteran and qualified for the position. He also wrote that he had been denied veteran disability benefits. (Def. Ex. 13).

Plaintiff filed a complaint with the Equal Employment Opportunity ("EEO") office. On June 19, 2008, the EEO Commission affirmed its lower agency decision that found Plaintiff failed to establish a prima facie case of discrimination based on age, race, sex, and disability. E.E.O.C. v. Michael J. Astrue, Comm'r, Soc. Sec. Admin., No. 0120071185, 2008 WL 2571321 (E.E.O.C. June 19, 2008). On September 19, 2008, Plaintiff, proceeding pro se, filed his complaint in this Court (Doc. 1) against Defendant, alleging violations of Title VII, 42 U.S.C. § 1981, the Americans with Disabilities Act ("ADA"), the Age Discrimination Employment Act ("ADEA"), and the Rehabilitation Act. Defendant filed a Motion for More Definite Statement (Doc. 6), which the Court granted because Plaintiff's complaint was too vague and ambiguous to allow Defendant to file an answer. Plaintiff had until May 13, 2009, to file an amended complaint that set forth the statutes he contended Defendant violated, how the statutes were violated, and the relief that Plaintiff requested. Plaintiff did not file an amended complaint.

Now before the Court is Defendant's Motion for Summary Judgment. The Court chooses not to dismiss Plaintiff's complaint for failure to obey the Court's order

requiring him to file an amended complaint.[3] The Court chooses to instead grant Defendant's Motion for Summary Judgment.

## II. DISCUSSION

### A. Plaintiff's Response Titled "Joint Motion to Dismiss"

Plaintiff's response to Defendant's Motion for Summary Judgment does not address his claims for discrimination that are before the Court, instead it addresses Plaintiff's claim for disability benefits before the United States Department of Veterans Affairs. Plaintiff also did not file affidavits or other material in his response, nor did he file a separate and concise statement of material facts as required by Local Rule 56.

The Court explained to Plaintiff in an order (Doc. 25) dated April 28, 2009, the summary judgment standard and warned him that final judgment may be rendered against him if he failed to file any affidavits or other material in opposition to Defendant's Motion for Summary Judgment. Even with the Court's warning, Plaintiff did not file affidavits or other material relevant to his discrimination claims. With this backdrop in mind, the Court now decides whether Defendant has satisfied his summary judgment burden.

### B. The Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and

---

[3] Defendant did not file a motion to dismiss after Plaintiff failed to file an amended complaint.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The court may not, however, make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The initial burden lies on the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets his burden, then the burden shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence. Lowe, 958 F.2d at 1569. If the evidence that the nonmovant presents, however, is "not significantly probative" or "merely colorable," then summary judgment may be granted. Liberty Lobby, 477 U.S. at 249.

### C.     Plaintiff's ADA Claim

Plaintiff's disability discrimination claim is not cognizable under the ADA because the ADA exempts the United States from its definition of employer. 42 U.S.C. § 12111(5)(B).   Accordingly, Defendant is granted summary judgment on Plaintiff's ADA claim.

### D.     Plaintiff's Title VII Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It appears from his complaint that Plaintiff is claiming that the SSA violated Title VII by discriminating against him on the basis of his race and sex.

As the United States Court of Appeals for the Eleventh Circuit has explained, "[t]here are two types of discrimination actionable under Title VII, disparate treatment and disparate impact." Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir.1999).  A disparate treatment suit is one in which an employee alleges that the employer "treats some people less favorably than others because of their race, color, religion, sex, or national origin." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).  Here, Plaintiff alleges he was treated less favorably than other applicants at the SSA with regard to hiring.

A plaintiff in a Title VII discrimination action bears the ultimate burden of

7

proving that race or sex was a determining factor in the challenged employment decision. A Title VII plaintiff may attempt to show this discrimination through either direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir.1999).

Plaintiff has produced no direct evidence of discrimination. He must therefore establish his race and sex discrimination claim by relying on the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To make out a prima facie case discrimination in a failure-to-hire case using circumstantial evidence, a plaintiff must demonstrate: (1) he belongs to a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) even though he was qualified for the position, he was not hired; and (4) the position remained open or was filled by another person outside of his protected class. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002).

If he establishes a prima facie case, then the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its decision. After an employer articulates a legitimate, non-discriminatory reason, the plaintiff, to survive a motion for summary judgment, must show that the proffered reason was pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

A plaintiff may show pretext by either directly persuading the court that a

discriminatory reason motivated the employer, or by indirectly showing that the employer's given explanation is unworthy of credence. Id. at 256.

Defendant argues that Plaintiff has produced no evidence of a prima facie case of discrimination. Rather, the undisputed evidence shows, according to Defendant, that Rineer was unaware that Plaintiff had applied for the position when she made the decision to hire Carlos Coleman. As a result, it was impossible for her to discriminate against Plaintiff.

The Court finds that Plaintiff fails to make out the fourth prong of a prima facie case of discrimination under Title VII. Carlos Coleman was of the same race and sex as him; thus, the position was not filled by someone outside his protected class. Summary judgment is granted to Defendant on Plaintiff's Title VII claims.

### E.     Plaintiff's Claim Under the ADEA and the Rehabilitation Act

In addition to his race and sex claims, Plaintiff alleges that Defendant's decision to hire Carlos Coleman, a 28 year-old man, violated his rights under the ADEA. The ADEA makes it unlawful for an employer to, among other things, fail or refuse to hire or "otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). Discrimination claims brought under the ADEA are governed by an evidentiary framework similar to that which governs claims brought under Title VII. MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir.1991).

9

Plaintiff also alleges that Defendant violated the Rehabilitation Act by failing to hire him because of his disability. The Rehabilitation Act prohibits federal agencies from discriminating against a person with a disability solely by reason of his disability. 29 U.S.C. § 794(a). Claims brought under the Rehabilitation Act for discrimination are governed by the same standards as claims brought under the ADA. Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 n. 2 (11th Cir. 1997). ADA disability discrimination claims are analyzed under the burden evidentiary framework that applies to Title VII discrimination claims. Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000). Thus, the same Title VII burden-shifting framework applies to Rehabilitation Act claims.

Defendant argues it is entitled to summary judgment on Plaintiff's age and disability claims because the evidence is undisputed that Rineer did not review the Plaintiff's application, and Rineer did not meet Plaintiff before she hired Carlos Coleman for the position; thus, it was impossible for her to discriminate against Plaintiff on the basis of his age or disability.

The Court assumes arguendo that Plaintiff has established a prima facie case of age and disability discrimination. Even with an assumed prima facie case showing, Defendant is entitled to summary judgment on these claims. Plaintiff has failed to show that Defendant's reason for not hiring him was pretextual. Defendant's proferred nondiscriminatory reason for failing to hire Plaintiff was that it was unaware that Plaintiff had applied for the position before it made its hiring

decision. Missing necessary paperwork, bureaucratic mistakes, and violations of hiring procedures are all sufficient, legitimate non-discriminatory reasons to justify not hiring an applicant. Schoenfeld, 168 F.3d at 1269. Plaintiff has not presented any evidence to rebut Defendant's reason, nor can the Court find any evidence in the record that controverts Defendant's legitimate non-discriminatory reason. Indeed, the fact that Plaintiff failed to follow proper application procedure supports the inference that Rineer had not read Plaintiff's application or seen Plaintiff before she hired Carlos Coleman. Defendant is accordingly entitled to summary judgment on Plaintiff's ADEA and Rehabilitation Act claims.

### F.    Plaintiff's 42 U.S.C. § 1981 Claim

Section 1981 provides relief for claims against state actors, "but does not provide a cause of action for discrimination under color of federal law." Lee v. Hughes, 145 F.3d 1272, 1277 (11th Cir. 1998). Because Plaintiff is suing a federal agency, he cannot bring a claim against it pursuant to 42 U.S.C. § 1981. The Court grants Defendant summary judgment on this claim.

### G.    Plaintiff's Claim for Veteran's Preference

It appears, although he refers to no statute, that Plaintiff has also brought a claim against Defendant for failing to hire him based on his 10-point veteran preference. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff did not file a complaint with the Secretary of Labor prior to bringing his veteran's claim in this court. The Court agrees.

Any person who has veteran preference and believes that an agency has violated his rights under a statute or regulation relating to veterans' preference may file a complaint with the Secretary of Labor. 5 U.S.C.§ 3330a(a)(1)(a). Then, the person may file a complaint in the district court after he has appealed the Secretary of Labor's decision to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 3330b(a)-(b).

Even assuming that Plaintiff has a cognizable cause of action under a veteran statute, there is no indication in the record that he filed a complaint with the Secretary of Labor or that the MSPB reviewed his claim. Because he did not exhaust these required administrative procedures, Plaintiff cannot pursue his veteran claim in this Court.

Finally, although not addressed by either party, the Court finds that this case is not a mixed case that would allow the Court to review Plaintiff's veteran claim even though he failed to file a claim with the Secretary of Labor. In a mixed case, a person may file a complaint with the MSPB or with the agency's EEO office. 29 C.F.R. § 1614.302(b). A mixed case is one in which the federal employee suffered an adverse agency action because of his "race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2). Actions that constitute adverse agency actions are enumerated in 5 U.S.C. § 7512(1)-(5) and 5 C.F.R. § 1201.3(a)-(c). The application for federal employment does not constitute an adverse agency action as defined in 5 U.S.C. § 7512(1)-(5) and 5 C.F.R. § 1201.3(a)-(c). Thus,

12

Plaintiff did not have the option of filing his veteran claim before the SSA's EEO office. He was required to file a complaint with the Secretary of Labor. Because he failed to do so, the Court grants summary judgment to Defendant on Plaintiff's veteran claim.

## III.  CONCLUSION

For the explained reasons, Defendant's Motion for Summary Judgment is granted.

**SO ORDERED**, this the 28th day of January, 2010.

*s/   Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc